ROBERT C. DANIELS,                          )
                                            )      **Davidson Chancery**
          **Plaintiff/Appellant,**          )      **No. 96-1814-III**
                                            )
VS.                                         )
                                            )
**CHARLES TRAUGHBER, Chairman,**            )      **Appeal No.**
**TENNESSEE BOARD OF PAROLES,**             )      **01A01-9707-CH-00297**
**ET AL.,**                                 )
                                            )
          **Defendants/Appellees.**         )

**FILED**

May 6, 1998

Cecil W. Crowson
Appellate Court Clerk

**IN THE COURT OF APPEALS OF TENNESSEE**
**AT NASHVILLE**

**APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY**
**AT NASHVILLE, TENNESSEE**

**HONORABLE ELLEN HOBBS LYLE, CHANCELLOR**


David L. Raybin, #3385
HOLLINS, WAGSTER & YARBROUGH, P.C.
2210 SunTrust Center, 424 Church Street
Nashville, Tennessee 37219

Joe Binkley, Sr., #2820
First American Center
315 Deaderick Street
Suite 2395
Nashville, Tennessee 37238-2395
ATTORNEYS FOR PLAINTIFF/APPELLANT


Patricia C. Kussman, #15506
Cordell Hull Building, Second Floor
425 Fifth Avenue South
Nashville, Tennessee 37243-0488
ATTORNEY FOR DEFENDANTS/APPELLEES


**AFFIRMED AND REMANDED.**



HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION




CONCURS IN SEPARATE OPINION:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

| | |
|---|---|
| ROBERT C. DANIELS, | ) |
| | ) Davidson Chancery |
| Plaintiff/Appellant, | ) No. 96-1814-III |
| | ) |
| VS. | ) |
| | ) |
| CHARLES TRAUGHBER, Chairman, | ) Appeal No. |
| TENNESSEE BOARD OF PAROLES, | ) 01A01-9707-CH-00297 |
| ET AL., | ) |
| | ) |
| Defendants/Appellees. | ) |

# O P I N I O N

The plaintiff, a prisoner in the custody of the Department of Correction, filed in the Trial Court a petition for the writ of certiorari from the action of the Board of Paroles on April 18, 1996, rescinding its order of April 9, 1994, granting the prisoner a parole. At the time of the rescission, the prisoner had not been released from custody.

On July 27, 1989, the prisoner was convicted of second degree murder in the death of Sylvia Coakley and sentenced to serve thirty-five years in the custody of the Tennessee Department of Correction.

By letter dated November 27, 1989, the parents of the victim, requested the Board of Paroles to notify them of any hearing by the Board in respect to the release of the prisoner.

By letter dated January 21, 1994, counsel for the parents notified the Board that he represented the parents of the victim; that they strongly opposed any early release of the prisoner; and that he desired to be notified of any hearing on the subject of the release of the prisoner.

On April 9, 1996, the board held a hearing regarding the release of the prisoner. The Board attempted to notify the parents of the victim, but the letter was not delivered because the parents had moved from the address furnished by them.

No effort was made to notify counsel of the parents of the victim as requested by him, although his correct mailing address was on file with the Board.

On the same date, the Board approved the early release of the prisoner effective July 15, 1996. The prisoner was still in custody when the Board next acted on April 18, 1996.

On April 10, 1996, Honorable Cheryl Blackburn, Assistant Attorney General, wrote the Board protesting the meeting and action of the Board without notification to her and reminding the Board of the strong opposition of her office to any early release of the prisoner.

On April 18, 1996, the Board met again, heard the parents of the victim and rescinded its April 9, 1996, action.

On June 14, 1996, the present suit was filed seeking:

> Immediate injunctive relief, common law writ of certiorari,
> Federal Civil Rights violation under 42 USC § 1983, both for
> money damages and for prospective injunctive relief.

The Trial Court heard the matter without a jury and, on June 24, 1997, filed a Memorandum and Order stating:

> This matter is before the Court on the plaintiff's request for issuance of a writ of certiorari. The premise of the request for the writ is that the defendant members of the Board of Paroles ("Board") acted fraudulently, illegally or arbitrarily in granting the plaintiff parole on April 9, 1996, and then subsequently rescinding the grant of parole on April 18, 1996.
>
> The defendants deny that there are grounds for the issuance of the writ. They assert that they acted pursuant to applicable statutes and rules. The defendants argue that they acted legally and that the rescission of parole was reasonable.
>
> Having considered the entire record and the argument of counsel and having carefully studied this matter, the Court determines that the plaintiff has failed to carry his burden in demonstrating his entitlement to issuance of a writ of certiorari. For the reasons set forth below, the Court

determines that the application for writ of certiorari shall be denied.

## Facts

The record before the Court reveals that the plaintiff was convicted of second degree murder of his former wife and was sentenced to thirty-five years imprisonment on July 27, 1989. During the seven and one-half years the plaintiff was confined, he had a good institutional record and was accorded trustee status.

A parole release hearing was conducted on April 9, 1996. The plaintiff's application for parole was supported by recommendations from two assistant wardens, other prison personnel, and friends. The hearing officials unanimously recommended that the plaintiff be released on July 15, 1996 on parole.

Subsequent to the April 9, 1996 hearing, the victim's family complained to the Board that neither they nor their attorney/representative had been notified of the April 9, 1996 hearing. The Assistant District Attorney General, who had prosecuted the case against the plaintiff, also complained that she had failed to receive notice of the April 9, 1996 hearing.

The record reveals that notice of the April 9, 1996 hearing was mailed to the victim's family, but that they did not receive the notice because they had moved and had not sent their new address to the Board. The family, however, had requested that their attorney, Larry Roberts, receive notice of parole hearings. Filed with the Court by the defendants is a letter dated January 21, 1994 from Mr. Roberts stating, "My clients strongly oppose any early release date for Mr. Daniels, <u>and I would ask that you notify me of any hearing of anything which could result in Mr. Daniels' release from confinement</u> [emphasis added]." The record reveals that the Board failed to notify Mr. Roberts of the April 9, 1996 hearing. The record further establishes that notice was mailed to the office of the District Attorney but for some reason the District Attorney who handled the case, Judge Cheryl Blackburn, did not receive the notice.

Thereafter, written victim impact statements were received by the Board, and on April 18, 1996, a parole rescission hearing was held. The victim's aunt and cousins testified regarding the impact of the crime on the victim's family. The victim's mother testified regarding the impact of the crime on the victim's family. The victim's mother testified, attributing a stroke her husband suffered and that her son sustained cirrhosis of the liver to the crime. The same three Board members, Traughber, Hill and Chase, unanimously voted to rescind the plaintiff's parole. The stated reasons were, "Declined; Review 4/99; Seriousness of Offense; Impact on Victim's Family."

The plaintiff then filed a request for appeal of the final decision of the April 18, 1996 hearing. The appeal was denied on May 7, 1996 on the grounds that the request did not meet any of the established criteria for granting an appeal hearing.

Subsequent to rescission of his parole, the plaintiff was immediately transferred from a minimum security facility, Nashville Community Service Center, to a maximum security facility, Middle Tennessee Reception Center.

### Conclusions of Law

To be entitled to a writ of certiorari, the plaintiff must demonstrate that the action of the Board was illegal, fraudulent or arbitrary:

> Under common law writ of certiorari, questions of law only will be reviewed by the courts. An action of an administrative agency which is not supported by any evidence is arbitrary and may be quashed on common law writ of certiorari. Whether or not there is any material evidence to support the action of the agency is a question of law to be decided by the reviewing court upon examination of the evidence introduced before the agency. Any additional evidence offered to the reviewing court is limited to the question of whether the agency exceeded its jurisdiction, or acted fraudulently, illegally or arbitrarily.

*Watts v. Civil Service Board for Columbia*, 6065 S.W.2d 274, 276-77 (Tenn. 1980).

In the case at bar, the plaintiff asserts that the writ is appropriate because the information presented to the Board on April 18, 1996 was no different from the information considered by the Board on April 19, 1996. The plaintiff argues that the Board was influenced by media and popular opinion concerns, and that those concerns caused the Board to arbitrarily rescind the plaintiff's parole.

The defendants concede that if there were no differences between the evidence presented at the parole grant hearing and that presented at the parole rescission hearing then it would have been arbitrary for the Board to have rescinded the plaintiff's parole because there would have been no evidence to support the Board's decision. The defendants, however, point to several differences between the April 9, 1996 hearing and the April 18, 1996 hearing which differences they assert support the decision to rescind parole.

First, the defendants note that the victim's aunts and cousins were present at the April 18, 1996 hearing and that the live testimony of these individuals, as well as their bearing

and demeanor, greatly distinguished the April 18, 1996 hearing from the April 9, 1996 hearing. The defendants point out that the victim's mother testified that her husband, the victim's father, was now in a nursing home suffering from a stress related stroke due to the death of their daughter, and that their son suffered from cirrhosis of the liver as a result.

The defendants further assert that Judge Cheryl Blackburn, the former Assistant District Attorney who prosecuted the plaintiff, was present at the April 18, 1996 hearing and pointed out discrepancies in the plaintiff's testimony at the April 9, 1996 parole hearing and testimony from his trial. At the April 9, 1996 parole hearing the plaintiff had described an altercation with his former wife in which he characterized that he "wrestled" with her. Judge Blackburn read parts of the transcript from the plaintiff's criminal trial which established that the plaintiff had bounced the victim's head off of the ground, had bitten her, and that she had sustained a large bruise on her left arm, a swollen eye and abrasions on her right and left shoulders.

Based upon the foregoing, the Court concludes that the plaintiff has failed to carry his burden in demonstrating his entitlement to a writ of certiorari.

First, the Board did not act fraudulently, illegally or arbitrarily in scheduling a second hearing to reconsider its April 9, 1996 decision to grant parole. Tennessee Code Annotated section 40-28-505(b) provides that at least fourteen days prior to a scheduled parole hearing, the Board is to notify the victim or the victim's representative of the date and place of the parole hearing. If the Board fails to give the required notice to the victim, the Board shall consider any written victim impact statement submitted within fifteen days after the parole decision has been finalized. If the Board determines that the impact statement warrants a new hearing, the Board shall schedule such a hearing with notice to the parties listed in the statute. Tenn. Code Ann. § 40-28-505(d)(2). Any notice required to be provided to the victim or the victim's representative is to be mailed to the last known address. Tenn. Code Ann. § 40-28-505(e). "It is the responsibility of the victim or the victim's representative to provide the Board a current mailing address." *Id.*

The Court finds, since the victim's family had requested that attorney Larry Roberts be notified of parole matters and since attorney Roberts formally notified the Board of this request by letter dated January 21, 1994, that attorney Larry Roberts qualifies under section 40-28-501(b)(4) as a "victim's representative who has requested notice of the date and place of the scheduled hearing" so as to warrant the Board sending him notice of the April 9, 1996 hearing. When the Board failed to send notice to attorney Roberts, that failure triggered the provisions of section 40-28-505(d), providing for a new hearing upon receipt of a written impact statement from a victim's family. The record reveals

that such a statement was received by the Board. The Court, therefore, concludes that the Board proceeded legally, correctly and validly pursuant to section 40-28-505 in scheduling a new hearing upon receiving a written impact statement from the victim's family subsequent to the failure of the Board to notify the representative of the victim's family, attorney Larry Roberts, of the April 9, 1996 hearing.

With respect to the decision to rescind the plaintiff's parole based on differences between the April 9, 1996 hearing and the April 18, 1996 hearing, the Court finds that the Board reasonably could have found the plaintiff's testimony at the April 9, 1996 hearing describing the July 13 altercation with his former wife misleading. The plaintiff describes the altercation as "wrestling" with his former wife. The details of that altercation as indicated in the trial transcript were that the plaintiff had bounced the victim's head off the ground, had bitten her and that she had sustained a large bruise on her left arm, a swollen left eye and abrasions on her right and left shoulders. As to the substantiality of live testimony, the Court concludes that observing the demeanor of witnesses as well as hearing their testimony could lead to a different conclusion about the impact of a crime on a family than just reviewing written information.

The choice to grant or deny parole involves a personal observation filtered through the experience of the decision maker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7-8, 99 S.Ct. 2100, 60 L. Ed.2d 688 (1979). A determination of whether to release a particular inmate on parole "must include consideration of what the entire record shows up to the time of the sentence, including the gravity of the offense in that particular case." *Id.* at 442 U.S. at 15.

The Court finds that the combination of live testimony from the victim's family as well as the discrepancy between the plaintiff's testimony at the April 9, 1996 of his altercation with his former wife and the facts of that altercation established at trial are substantial enough distinctions to support the Board changing its decision regarding parole and, therefore, that the change in the decision regarding parole from the April 9 hearing to the April 18 hearing was not arbitrary.

It is, therefore, ORDERED that the plaintiff's application for writ of certiorari is denied. Costs are taxed to the plaintiff.

On appeal, the prisoner presents the following issues:

1.      Whether the Board's rescission of Mr. Daniels' parole was in violation of the due process provisions of the United States and Tennessee Constitutions, specific

Tennessee statues, and the Parole Board's own rules and regulations.

2.    Whether the Board's rescission of parole was arbitrary and illegal given that the "seriousness of the offense" could not form the basis of a parole rescission.

3.    Whether the provisions of T.C.A. § 40-28-505 contemplate that an attorney for the family of a person who was killed, constitutes a "statutory victim" for purposes of parole hearing notification where the family has already requested notification but has failed to keep the Parole Board advised of their current address as the statute requires.

The Board expresses the issues as follows:

Tennessee law provides that a common law writ of certiorari will issue when an agency action has been illegal or is not supported by an evidence. The Board of Paroles scheduled a second parole hearing for the appellant after hearing that his victim's family had not received notice of his initial hearing. After holding a second hearing where his victim's family was permitted to protest his release, the Board rescinded the appellant's grant of parole. The issues presented on appeal are:

1.    Whether rescinding the appellant's parole violated state and federal constitutional guarantees of due process, Tenn. Code Ann. § 40-28-505, and/or the Rules of the Board of Paroles;

> This statute provides that if the Board fails to provide advance notice of a scheduled parole hearing to a victim or victim's representative, the Board may schedule a subsequent hearing if a written victim impact statement warrants it.

2.    Whether testimony from the victim's family at the second hearing constituted "pertinent information not available at the time of the [first] hearing" sufficient to justify parole rescission; and

3.    Whether Tenn. Code Ann. § 40-28-505 permits a victim to request notification of scheduled parole hearings through an attorney.

**Applicable Law**

T.C.A. § 40-28-117 provides in pertinent part as follows:

40-28-117. **Grounds for parole - Terms**. (a) Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.

T.C.A. § 40-28-505 provides in pertinent part as follows:

(b) At least thirty (30) days prior to a scheduled parole hearing and three (3) days prior to a parole revocation hearing, the board shall send a notice of the date and place of the hearing to the following individuals:

(1) The trial judge for the court in which the conviction occurred, or the trial judge's successor;

(2) The district attorney general in the county in which the crime was prosecuted;

(3) The sheriff of the county in which the crime was committed; and

(4) The victim or the victim's representative who has requested notification of the date and place of the scheduled hearing and/or notice of the board's final decision.

- - - -

( c) No later than thirty (30) days after a parole or parole revocation decision has been finalized, the board shall send notice of its decision to those required to receive notice under subsection (b), together with notice that any victim whom the board failed to notify as required in subsection (b) has the opportunity to have a written victim impact statement considered by the board, pursuant to subsection (d).

- - - -

(2) If within fifteen (15) days after a parole or a parole revocation decision has been finalized, the board receives a written victim impact statement from a party to whom the board failed to provide the notice required in subsection (b), the board shall consider the statement. If the board finds that the victim impact statement warrants a new hearing, it shall schedule such a hearing, subject to all notification requirements under subsection (b).

T.C.A. § 40-28-503 reads as follows:

40-28-503. **Attendance policies - Standard victim notification form**.

(a) The board shall establish a policy governing attendance at board hearings and submission and use of victim impact statements. Copies of the policy shall be available upon request. The policy shall govern:

(1)  The requirement that those requesting notification of parole and parole revocation hearings keep the board advised of their current addresses and telephone numbers;

(2)  Instructions for attending and participating in parole and parole revocation hearings;

(3)  The limitations on attendance as set forth in § 40-28-502;

(4)  Reasonable limitations on oral presentations; and

(5)  Information about board discretion to investigate victim impact statements.

(b)  The board shall establish a standard victim notification form.  The board shall distribute copies of such forms to the victim witness coordinator in each judicial district for the state who shall make copies of the form available to the appropriate persons. [Acts 1993, ch. 336, § 3.]

Under the common law writ of certiorari, the reviewing court is limited to the inquiry of whether the administrative agency acted fraudulently, illegally or arbitrarily. *Watts v. Civil Service Board for Columbia*, Tenn 1980, 606 S.W.2d 274.

Nothing is found in this record to indicate that the Board acted fraudulently, illegally or arbitrarily.

A prisoner has no constitutional or inherent right to conditional release prior to the expiration of a valid sentence.  *Grienholtz v. Inmates of Nebraska, Penal and Correctional Complex*, 442 US1, 99 S.Ct. 2100, 60 L.Ed. 2d 668 (1979); *Kaylor v. Bradley*, Tenn. App. 1995, 912 S.W.2d 728.

The parole of prisoners rests solely within the discretion of the Board of Paroles. *Wright v. Trammell*, 6th Cir. 1987, 810 F.2d 589.

A prisoner possesses no protected liberty interest in a unilaterally expected release. *Jago v. Van Curen*, 454 US 14, 102 S.Ct., 70 L.Ed.2d 13 (1981).

A prisoner's right to early release must be found in the State Statutes and Rules of the Board. *Wells v. Tennessee Board of Paroles*, Tenn. App. 1995, 909 S.W.2d 826.

Nothing is found in this record to indicate that any constitutional or inherent right of the prisoner has been violated.

The prisoner complains that the Board heard evidence from the victims tending to exacerbate the seriousness of his offense.

The administrative record contains a hand written summary of the evidence received by the Board at the April 18, 1996 hearing. It includes the following:

> Ms. Blackburn showed pictures of victim's property, bruises on Mrs. Coakley --- read portions of transcript.
>
> Robert Schultz was present August 16, 1988. Subject shot through door - shot Mrs. Coakley.
>
> Larry Roberts spoke of continued violence in this case. Showed pictures of Mrs. Coakley after she was shot.
>
> Mary Mathews - Friend, showed picture of Mrs. Coakley prior to incidents. Very attractive. Spoke of the violence against Mrs. Coakley.
>
> Mrs. Coakley - Mother of victim. Many Tears.
>
> Mary Ann Austin - Sylvia Coakley's aunt. Many tears. Been detrimental to family.
>
> Carla Sanders - Cousin to victim. She said body was so bad they had a closed casket funeral. Read from a paper. Showed much hostility.

The right of peaceable protest and petition for redress of grievance is constitutional. U.S. Constitution, Amendment I; Tennessee Constitution, Article I, Section 23. Inherent in

such rights is the rights of citizens to demonstrate personally the intensity of their sentiments. The Board did not initially have the benefit of the exercise of these rights. At its second hearing it did have the benefit of these expressions and rebuttal of the prisoner's testimony of a gentle and accidental murder.

In view of the statutes relating to the Board of Paroles, quoted above, the arguments regarding the Open Meetings Law are deemed irrelevant.

The letter from the attorney for the family of the victim was effective to furnish the Board with a new address for the family, i.e., in care of their attorney. Moreover, as counsel for interested parties, he was entitled to notice in his own right.

Each of the issues present above has been examined and resolved. No reversable error is found in the actions of the Board or the Trial Court.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for necessary further proceedings.

**AFFIRMED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS IN SEPARATE OPINION:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE