IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2017 Session

## ERIC S. STONE v. TENNESSEE BOARD OF PAROLE

**Appeal from the Chancery Court for Davidson County**
**No. 15-1487-IV      Robert E. Lee Davies, Senior Judge**

_____

### No. M2016-01730-COA-R3-CV
_____

Petition for writ of certiorari; inmate appeals the trial court's order affirming the Tennessee Board of Parole's decision to rescind its earlier grant of parole and deny parole. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

David L. Raybin, Nashville, Tennessee, for the appellant, Eric Stone.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Pamela S. Lorch, Senior Counsel, for the appellee, Tennessee Board of Parole.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Eric Stone is an inmate at Bledsoe County Correctional Complex, serving a 25-year sentence for manufacturing methamphetamine. On March 16, 2015, Mr. Stone had a parole hearing; there were no letters sent in opposition to Mr. Stone being granted parole in advance of the hearing, and at the hearing, no one testified against his parole. On March 19 the Tennessee Board of Probation and Parole ("the Board") accepted the recommendation of the hearing officer and granted Mr. Stone parole, with an effective release date of June 8, 2015.

After the decision to grant parole was made, the Board received letters from District Attorney General Lisa S. Zavogiannis and Warren County Sheriff Jackie Matheny stating they were unaware of the parole hearing and that they opposed his

parole. General Zavogiannis' letter stated, *inter alia*, that she "adamantly opposed" parole based upon Mr. Stone's "lengthy history of criminal behavior" and his repeated parole violations. Sheriff Matheny's letter stated he opposed Mr. Stone's parole based on his "past history," that the Warren County Sheriff's Department had expended substantial human and financial resources "making cases and arresting Mr. Stone," and that he had agreed to serve 45 percent of his 25-year sentence under the terms of his plea agreement. On May 11, Mr. Stone was notified that, as a result of "new information received after [the parole] hearing," the Board had voted to schedule a pre-parole rescission hearing on June 16.

At the June 16 hearing, the hearing officer opened by stating that the hearing was being held "because the board received significant new information not presented at the [parole] hearing," that the hearing officer wanted to "go over this information again with you to make sure that the board has everything they need to decide if your parole should be rescinded," and that the hearing officer would be making a nonbinding recommendation to the Board in that regard. At the conclusion of the hearing, the officer summarized his recommendation:

> Mr. Stone this isn't an easy decision for me. I -- don't know if I would have done the hearing -- your previous hearing different than your other hearing officer, or not, but that's neither here nor there.
>
> You know, you -- we went -- we went through the whole thing. They granted you. They came and talked to your mom. A release plan was approved. And then they pulled it back due to these -- this opposition that we got.
>
> I don't really think the opposition gave me more -- any more information than what I already had about you. I mean, we -- we knew every time you violated. We knew all your charges and everything else.
>
> So that being said, I'm just going to leave it that the previous decision remains. The board will make the final decision on that though.

By notice dated July 8, Mr. Stone was advised that the Board declined to grant him parole, based on a "substantial risk that the offender will not conform to the conditions of his release" and that "[r]elease from custody at this time would depreciate the seriousness of the crime . . . or promote disrespect of the law."[1] The notice advised Mr. Stone of his

---

[1] Tennessee Code Annotated section 40-35-503(b) sets a limitation on eligibility for parole; the portions of the statute cited in the July 8 notice are subparagraphs (1) and (2):

> (b) Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:
> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;

right to appeal the decision pursuant to Tennessee Code Annotated section 40-28-105(d)(11), by sending a request to the Appeals Unit of the Board within 45 days. Mr. Stone, through counsel, sent a letter to the Board on August 20, appealing the decision and asserting that the Board made "significant procedural errors" in rescinding his parole.

By letter dated November 5, 2015, the Parole Administrator advised Mr. Stone that "your allegation of significant procedural errors by the Hearing Official(s) was not substantiated," and his appeal had been denied; the notice further advised that "[t]his disposition is final and there is no further appeal recourse to you on this matter through the Tennessee Board of Parole." Notwithstanding the latter representation, the Parole Administrator notified Mr. Stone by letter dated December 3 that "a review of the record of [the June 15, 2015 parole grant hearing] warrants further review by the Board as to whether a new hearing will be held"; that his file had been sent to the Board for further review; and that he would be notified of the decision when the review was completed.

On December 9, Mr. Stone filed a Petition for Writ of Certiorari in Davidson County Chancery Court, seeking review of the Board's decision to rescind his parole. On December 14, the Parole Administrator sent Mr. Stone a letter advising him that the Board had granted his request for an appeal hearing, and on January 21, 2016, Mr. Stone's counsel was notified that the appeal hearing had been set for February 26.

On January 25, Mr. Stone filed a motion in the certiorari proceeding seeking a stay of the administrative proceeding; he asserted that the Board's initial decision to deny Mr. Stone's appeal and statement that no further relief was available from the Board were final decisions for purposes of challenging the rescission of his parole. The Board responded, opposing the motion and moving the court to stay the certiorari proceeding on the ground that the administrative proceeding was not yet complete. The court denied both motions on February 19, 2016.

The appeal hearing was held on February 26. The hearing officer explained that the hearing had been granted because Mr. Stone had not been provided with copies of the March 25, 2015 letters from General Zavogiannis and Sheriff Matheny prior to the June 16, 2015 hearing and that the hearing would proceed first to determine whether the previous recommendation that Mr. Stone be granted parole should be rescinded, and, if so, to hold a new parole hearing.[2] The hearing officer then allowed Mr. Stone and his

---

(2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;

[2] The hearing officer stated:

Gentlemen my job today is to make a recommendation to the Board. And that recommendation - - because this new hearing was granted today, we're basically going to

counsel to state "the reasons you feel like or you would ask the Board to - - to let that previous decision [to grant parole] remain." After Mr. Stone and his counsel responded, the hearing officer ruled:

> The fact that the letters came in and the Board's procedure when -- after a -- after the votes have been done in a particular case, if -- if things come to light, if new information becomes available, whether it be opposition letters or letters of support or new convictions or judgments, anything that triggers that, the Board will always come back and revisit the case. And that's what they did in this case, sir, because of the letters.
>
> Now, I understand your position today, sir. I will be making a recommendation to the Board.
>
> And, again, I have -- I have two options, Gentlemen: To let the previous decision remain or to rescind that decision -- or recommend to rescind it and go to a grant hearing. Now, these letters came in after the initial date. The Board was not aware of the letters at the time when they -- when they initially voted. All right.
>
> Based on that new information today, Gentlemen, my recommendation to the Board as to the rescission is going to be that they rescind that previous decision and that we go to a grant hearing today.
>
> So, Gentlemen, what we will be doing now is going into a -- a -- a grant hearing on the sentence. And we'll go over some more facts in just a moment, and we'll let you give me some more information, if you want to, sir. We'll be going over your prior record.
>
> And at the conclusion of this hearing, I will be making a recommendation whether or not to recommend to the Board that you be granted parole or declined parole.
>
> The original decision, Mr. Raybin [counsel for Mr. Stone], was to parole, with an effective date in June. That date has passed. So, technically, to let the previous decision remain -- well, we have passed that date. So I am going to recommend to rescind that decision and go into a grant hearing.
>
> All right. Mr. Stone, we are seeing you today on a 25-year sentence out of Warren County for Schedule II drug charges. It's 25 years at 45 percent.

---

re-do the rescission hearing. And we'll be going over the information that we had previously.

And at the conclusion of this hearing I will be making a recommendation to the Board whether or not to let the previous decision remain or to rescind that previous decision. And if my recommendation is to rescind that previous decision, then we would initially go to a grant hearing on your 25-year sentence.

The hearing officer proceeded to conduct the second aspect of the hearing, which consisted of his own interrogation of Mr. Stone and by Mr. Stone's counsel. At the conclusion of Mr. Stone's examination and summation by his counsel, the hearing officer stated:

> So what we're looking at here today is a Class B felony. It's a very serious offense, Mr. Stone. You have served some time on it. You've done some good things. You don't have any write-ups since 2011. I want to commend you for that.
>
> You completed, it appears, several programs. You should be commended for that.
>
> The previous decision we -- I have asked the Board to rescind today because the date has passed.
>
> This is an early release here, Mr. Stone. Your RED date being not until 2018, June 26 of 2018. So this is considered an early release here.
>
> Other hearing officers and -- and Board members may or may not agree with the recommendation, and that's – that's their right, sir. So today I will be making a recommendation, and that's all it is.
>
> Because you were on probation and on parole a couple of times -- not on this sentence but in the past -- I -- I have to consider what I consider the big picture.
>
> What you've done when you've been out on supervision, you've had three previous violations. And that puts you in the category I would consider a high risk. And a Class B felony, the seriousness of it, I don't feel like it rises to the level of early release today. The Board may or may not agree.
>
> So my recommendation to the Board today, Mr. Stone, is going to be that due to the high risk and the seriousness of the offense I am going to recommend that they decline your parole and review your case in two years, which would be February of 2018.
>
> Now, the Board will hear this case. They will hear the tape. They will see the file. They may not agree with anything I say today. So that's not final today.
>
> But do you understand what I am recommending, sir?
>
> MR. STONE: Yes, sir.
>
> [Hearing Officer]: And the Board may choose to agree with part of it or none of it or all of it. And when your votes come, that is the final decision. Do you understand that today, sir?
>
> MR. STONE: Yes, sir.

The Board accepted the recommendation, and in the letter notifying Mr. Stone of its decision to decline to grant parole, the Board cited the same reasons stated in its first rescission letter to Mr. Stone, and set the next parole hearing for February 2018.

On August 9, 2016, the court issued a Memorandum and Final Order, holding that the Board did not act illegally, arbitrarily or capriciously in rescinding the prior grant of parole and denying Mr. Stone after the February 26, 2016 parole hearing; the court affirmed the Board's decision. Mr. Stone appeals, stating the following issues for review:

1. Whether the parole board acted illegally, arbitrarily, without material evidence and in violation of rules and statutes in rescinding the petitioner's parole so that the previously granted parole should be reinstated.

2. Whether the parole board hearing conducted after the original petition for certiorari was filed with the Chancery Court is a nullity and should not be considered by the Court.

## II. STANDARD OF REVIEW

Decisions regarding parole are discretionary and are vested exclusively in the Board of Parole, *Doyle v. Hampton*, 340 S.W.2d 891, 893 (Tenn. 1960), and whether such decisions are lawful is subject to limited review under the common law writ of certiorari. *Baldwin v. Tennessee Board of Paroles*, 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003). Common law writ of certiorari may be used "to remedy (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Willis v. Tennessee Dep't of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003) (citing *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). As this court has explained:

> The scope of review under the common law writ . . . is very narrow. It covers only an inquiry into whether the Board has exceeded its jurisdiction or [acted] illegally, fraudulently, or arbitrarily. . . . At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, the decision would not be subject to judicial review.

*Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994) (citations omitted).

## III. ANALYSIS

Mr. Stone argues that the Board acted illegally in rescinding his parole. More specifically, Mr. Stone asserts that (1) the Board erroneously considered and gave controlling weight to the late-filed letters of opposition, which contained no new

6

information, and thus he was denied due process; and (2) the Board did not provide Mr. Stone with an adequate reason for the rescission.

Rescissions of parole are governed by Tenn. Comp. R. & Regs. 1100-01-01-.12; the portions of the regulation pertinent to the issues in this appeal are:

(1) Pre-parole Rescission.
(a) If an inmate has been granted parole and has subsequently been charged with institutional misconduct, escape, or has been served with a warrant or received a new felony sentence or had the certification of parole eligibility withdrawn by the Department of Correction or has other changes in circumstances sufficient to become a matter of record, the Board shall be promptly notified and advised of such new circumstances.
(b) No inmate about whom notification has been made pursuant to subparagraph (a) of this subsection shall be released on parole until such time as the institution has been properly informed that no change has been made in the Board's order to parole.
(c) Upon receiving notification as required by subparagraph (a) of this subsection, the Board may schedule a parole rescission hearing or notify the institution that the grant of parole remains.

(2) The Pre-Parole Rescission Procedure.
(a) The rescission hearing may be scheduled, if possible, for the next docket of parole hearings at the institution where the inmate is being held.
(b) The inmate shall be given adequate notice of the reason(s) such rescission hearing is being conducted. Such notice shall be given at least three (3) days prior to the scheduled date of the rescission hearing. The reason(s) for the rescission hearing shall be stated in the notice, with the exception of information that is considered confidential by the Board.
(c) A rescission hearing may be held in order to determine if the inmate's misconduct or other change in circumstances is sufficient to warrant rescission of such inmate's parole grant.
(d) The inmate may appear at his or her rescission hearing and may present documentary evidence and witnesses in his or her behalf at the rescission hearing.
(e) The inmate's presence is not necessary at the rescission hearing if:
1. The institutional misconduct has been established by the institution's disciplinary committee by a finding that the inmate has violated the rules of his or her confinement; or
2. If the misconduct has resulted in a conviction in a court of law.
(f) The Board may delay the parole grant for up to one hundred and twenty (120) days if, in its opinion, it has insufficient information before it to reach an informed and fair decision at the rescission hearing. Awaiting the

disposition of institution discipline committees, new charges or indictments, or investigating new detainers shall also be sufficient grounds to continue a rescission hearing under this subparagraph.

(g) If the result of the process is that the inmate's grant of parole is rescinded, he or she shall be given written notice evidencing the reasons for the rescission of the parole grant.

(h) A grant of parole shall not be rescinded except upon the concurrence of two (2) Board Members.

* * *

(4) Appeal Procedure.

(a) An inmate whose parole has been rescinded may request an appellate review by the Board. Such review shall be in accordance with the procedure outlined in rule 1100-01-01-.08 (4).

Also pertinent to this appeal is Tennessee Code Annotated section 40-28-505(b), which requires that, at least 30 days prior to a scheduled parole hearing, the Board send notice of the date and place of the hearing to, *inter alia*, the district attorney general in the county in which the crime was prosecuted and the sheriff of the county in which the crime was committed.[3]

Mr. Stone contends that the letters the District Attorney and Sheriff submitted after the hearing should have no legal effect because each had received the notice prior to the hearing and failed to timely submit their objections or appear at the hearing. Mr. Stone also argues that the letters were not "significant new information" within the meaning of Rule 1100-01-01-.09(d)[4] of the Rules of the Board of Parole. The Board

---

[3] If the Board fails to provide the required notice, section 40-28-505(d) provides the following remedies:

(1) Prior to a parole or parole revocation hearing, a party to whom the board failed to provide the notice required in subsection (b) may request the board to postpone the scheduled hearing. Upon that request, the board may, for just cause, postpone the scheduled parole or parole revocation hearing in order to provide a reasonable opportunity for the party to attend the hearing and, if that party is a victim, to submit a victim statement; and

(2) If within fifteen (15) days after a parole or a parole revocation decision has been finalized, the board receives a written victim impact statement from a party to whom the board failed to provide the notice required in subsection (b), the board shall consider the statement. If the board finds that the victim impact statement warrants a new hearing, it shall schedule the hearing, subject to all notification requirements under subsection (b).

[4] Tenn. Comp. R. & Regs. 1100-01-01-.09(1)(d) states:

(1) Grant of Parole.
* * *

8

contends that the opposition of the District Attorney and Sheriff was not known to the Board until after the vote and that their opposition to Mr. Stone's parole was "significant new information" within the meaning of the regulation.

It is not disputed that both the District Attorney and Sheriff received notice of Mr. Stone's parole hearing in accordance with Tennessee Code Annotated section 40-28-505 and Rule 1100-01-01-.06(2) of the Rules of the Board of Parole.[5]   The question is whether the Board was prohibited from considering the letters in determining to hold a pre-parole rescission hearing and, after rescinding the parole, denying him parole a second time.  Given the standard of review we apply and the substantial deference we are obliged to give to the Board's interpretation and application of its rules, we cannot conclude on the record presented that the Board acted illegally, arbitrarily or fraudulently; rather, we conclude that the Board reached the decisions in a lawful manner.

As noted by this court in *Kaylor v. Bradley*, "the mere possibility of parole is not a constitutionally protected liberty interest." 912 S.W.2d 728, 732 (Tenn. Ct. App. 1995) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7-11 (1979)).  Nonetheless, we have recognized that the Parole Board is obligated to follow the law and its own rules, and "inmates are entitled to whatever due process arises from the proper application of state statutes and the rules" of the Board. *Wells v. Tennessee Bd. of Paroles*, 909 S.W.2d 826, 829 (Tenn. Ct. App. 1995).

The facts in the case at bar are similar to those presented in *Daniels v. Traughber*, 984 S.W.2d 918 (Tenn. Ct. App. 1998), wherein a prisoner who had been convicted of second degree murder challenged, by writ of certiorari, the decision by the Board of Paroles to rescind its earlier grant of parole.  Neither the victim's parents nor their counsel had been notified of the parole hearing and, upon learning of the grant of parole, submitted written victim impact statements to the Board. *Id*. at 920.  The notice of the hearing had been sent to the office of the District Attorney who prosecuted the case, but she did not receive the notice; she also wrote the Board protesting the grant of parole. *Id*. at 919, 920.  After receiving the statements and the District Attorney's letter, the Board held a parole rescission hearing where it heard testimony from members of the victim's family and voted to rescind parole. *Id*. at 920.  The trial court denied the application for the writ of certiorari and dismissed the case; on appeal, this court affirmed the decision,

---

> (d) Upon receipt of significant new information, the Board may, on its own motion, reconsider any parole grant case prior to the release of the inmate and may reopen and advance or delay a parole date.

[5]  In its response to Mr. Stone's requests for admissions, the Board admits that notices of Mr. Stone's parole hearing were sent to the trial judge, the victim witness coordinator in the District Attorney's Office, and the Warren County Sheriff's Department.

holding that the Board's action was within the authority granted under the statutes and that the Board did not act fraudulently, illegally, or arbitrarily in considering the victim impact statements and holding a second hearing. *Id*. at 924-25.

In the case at bar, the opposition of the District Attorney and Sheriff to the grant of parole to Mr. Stone was not known to the Board prior to the March 16, 2015 hearing; the opposition to the grant was characterized by General Zavogiannis in her letter as "adamant." Tenn. Comp. R. & Regs. 1100-01-01-.09(1)(d) permits the Board to reconsider a grant of parole prior to the release of an inmate where it receives "significant new information." The procedure to reconsider the grant of parole is governed by Tenn. Comp. R. & Regs. 1100-01-01-.12. The due process protection available to Mr. Stone in this circumstance is only that which "arises from the proper application of the statutes and rules." *Wells*, 909 S.W.2d at 829.

In common law certiorari proceedings, we are obliged to give substantial deference to the agency's interpretation of its own rules. *See Moore v. Neeley*, No. W2006-00438-COA-R3-CV, 2006 WL 3371132, at *5 (Tenn. Ct. App. Oct. 6, 2006); *Jackson Exp., Inc. v. Tennessee Pub. Serv. Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984). Under the circumstances presented, the action of the Board in considering the letters of opposition as "significant new information" and the resulting rescission of Mr. Stone's parole was authorized by the regulations. We do not condone the manner in which this saga unfolded; however, the opposition to Mr. Stone receiving parole was not due to any action or inaction on the Board's part, and the Board is bound by law to consider opposition to an inmate's being granted parole. Further, Mr. Stone had no protectable interest in any particular application of the regulations at issue.

## IV.   CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

RICHARD H. DINKINS, JUDGE

10